1  Lena N. Bacani (SBN 213556)
   lena.bacani@lozaip.com
2  LOZA & LOZA, LLP
   305 N. Second Ave., Ste. 127
3  Upland, CA  91786
   Telephone: (877) 406-5164
4  Facsimile: (213) 394-3625

5  Attorneys for Plaintiff,
6  Fight Camp Conditioning, LLC

7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10

11 | FIGHT CAMP CONDITIONING, LLC,        | CASE NO. 8:20-cv-00417

12 |                    Plaintiff,

13 | v.                                   | **COMPLAINT**

14 |

15 | HYKSO INC.                           | JURY TRIAL DEMANDED

16 |                    Defendant.

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Fight Camp Conditioning, LLC ("FCC" or "Plaintiff"), by and through its attorneys, brings this Complaint against Defendant Hykso Inc. ("Hykso" or "Defendant"), and alleges as follows:

## NATURE OF THE ACTION

1.     Two California-based companies offering combat sport-related fitness classes on-line under identical trademarks simply cannot coexist without causing irreconcilable customer confusion.  That is why FCC brings this action for:  (1) injunctive relief, damages and other available remedies for false designation of origin and association under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) injunctive relief, statutory damages, and other available remedies for each illegally registered domain name, actual damages, and punitive damages for illegal cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (3) injunctive relief and actual damages for Fraudulent Registration of Marks, 15 U.S.C. § 1120; (4) injunctive relief, damages and other available remedies for violation of California state common trademark law; and (5) injunctive relief, restitution, and other available remedies for unfair competition under California Business and Professions Code § 17200 *et seq.*

## JURISDICTION AND VENUE

2.     This is a civil action arising under the trademark and unfair competition laws of the United States.  This Court has original jurisdiction over the subject matter of the Lanham Act and Anti-Cybersquatting Consumer Protection Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.     The Court has pendant jurisdiction over the state trademark infringement and unfair competition claims under 28 U.S.C. §§ 1338(b) in that the claims are joined with a substantial and related claim under the Trademark Laws of the United States and are so related to the federal claims that they form part of the same case or controversy and arise from a common nucleus of operative facts.  15 U.S.C. §§ 1501, *et seq.*

1      4.      This Court has personal jurisdiction over Defendant because it has

2  engaged in systematic and continuous business activities in this District and resides

3  here.

4      5.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c)

5  and 1391(d).

6                       **PARTIES**

7      6.      Plaintiff Fight Camp Conditioning, LLC ("FCC" or "Plaintiff") is a

8  California limited liability company that maintains its principal place of business at

9  62 Cactus Flower, Irvine, CA  92620.

10      7.      Upon information and belief, Defendant Hykso Inc. ("Hykso" or

11  "Defendant") is a Delaware corporation that maintains its principal place of

12  business at 3200 Park Center Drive, Suite 1400, Costa Mesa, CA  92626.

13               **FACTUAL ALLEGATIONS**

14      8.      Corey Beasley, is a well-known fitness trainer who has trained athletes

15  for over 22 years, and is the principal and sole owner of Fight Camp Conditioning,

16  LLC ("FCC").  FCC owns and has continuously and substantially used, and

17  continues to use, the "FIGHT CAMP CONDITIONING" and "FIGHT CAMP"

18  trademarks (collectively, "FIGHT CAMP Marks") in commerce since 2011.

19      9.      Since founding Fight Camp Conditioning in 2011, Mr. Beasley has

20  purposefully and steadily invested in the FIGHT CAMP Marks to grow FCC's

21  recognition as a quality brand in the fitness industry.

22      10.     Since 2012, FCC has used, and continues to use, its FIGHT CAMP

23  Marks on social media platforms, including Facebook, YouTube, Instagram,

24  Twitter and Pinterest, with approximately 68,553 followers.  FCC also has nearly

25  20,000 subscribers on its email marketing list.

26      11.     FCC acquired and registered the domain name for its website,

27  https://fightcampconditioning.com ("FCC Website"), in 2011.  The FCC Website

28

domain name incorporated FCC's name and FIGHT CAMP Marks, which were distinctive at that time of registration.

12.     FCC has continuously promoted and sold its on-line training programs and merchandise under the FIGHT CAMP Marks on the FCC Website since at least 2014.  The FCC Website features numerous content, including over 400 articles, 100 podcasts and videos from leading fitness coaches showcasing workouts, tips and other content for martial artists, wrestlers, boxers, mixed martial arts ("MMA") fighters, and others interested in combat sports.  FCC sells over a dozen FCC on-line training programs geared for a range of customers, from casual at-home participants to serious combat athletes.  FCC also sells clothing and other merchandise on the FCC Website.

13.     All of FCC's products and services are promoted and sold under its FIGHT CAMP Marks to customers across the United States and around the World through FCC's Website.

14.     Upon information and belief, Defendant is a competitor of FCC, selling on-line and on-demand fitness and boxing workouts and related products.

15.     Plaintiff first learned of Defendant's website, https://joinfightcamp.com ("Defendant Website") around September 2019. Defendant sells on-line and on-demand fitness and boxing workouts, monthly memberships, and workout accessories such as boxing gloves, mats, and punching bags, on the Defendant Website under the "FIGHTCAMP" trademarks (hereafter "Infringing Marks") detailed below.

16.     Upon information and belief, Defendant knew of FCC, the FIGHT CAMP Marks, and FCC's use of the FCC Website domain name prior to registering the domain name for Defendant's Website.

17.     Defendant adopted the domain name for Defendant's Website in bad faith, in order to divert customers away from FCC's Website and to trade off the good will and reputation FCC had built for its business and FIGHT CAMP Marks.

18.     On September 2019, FCC learned that Defendant had filed for federal registration for the Infringing Marks.

19.     On May 28, 2018, Defendant filed an intent-to-use App. Ser. No. 87/938,573 for registration of FIGHTCAMP in International Class 041 for "Providing classes, workshops and seminars in the fields of fitness, exercise, martial arts, and boxing; physical fitness instruction and consultation; boxing instruction and consultation, physical fitness conditioning classes; physical fitness training services; boxing and martial arts training services; providing a website featuring information on exercise, physical fitness, martial arts, and boxing accessible through a global computer network and mobile devices."  The application registered as Reg. No. 5,922,954 ("the '954 Reg.") on November 26, 2019.   Defendant listed its first use of the mark in commerce as January 15, 2018.

20.     On May 28, 2018, Defendant filed an intent-to-use Application, Ser. No. 87/938,571 for FIGHTCAMP in International Class 038 for "Streaming of audio and video materials on the Internet featuring physical fitness classes, training, and instruction; streaming of audio and video materials on the internet featuring mini-documentaries of athletes or fitness participants."  The application registered as Reg. No. 5,909,249 on November 12, 2019.  Defendant listed its date of first use in commerce as January 15, 2018.

21.     On May 28, 2018, Defendant filed an intent-to-use Application, Ser. No. 87/938,339 for FIGHTCAMP in International Class 009 for "Downloadable software for the collection, storage and display of performance data from various fitness activities; downloadable software for tracking, monitoring and planning fitness training activities; downloadable software for viewing audio and video materials featuring physical fitness classes, training, and instruction; pedometers; altimeters; multifunctional electronic devices for displaying, measuring, and transmitting information including punches thrown, time, date, heart rate, global positioning, direction, distance, altitude, elevation, speed, pace, steps taken, calories

burned, routes, navigational information, changes in heart rate, excercise-specific motions, and activity level; downloadable software for viewing audio and video materials."  The application registered as Reg. No. 5,886,311 ("the '311 Reg.") on October 15, 2019.  Defendant lists its date of first use in commerce as January 22, 2018.

22.    On May 28, 2018, Defendant filed an intent-to-use application, App. Ser. No. 87/938,570 for registration of FIGHTCAMP in International Class No. 028 for "Boxing gloves; striking boxing bags; fighting gloves; athletic sporting goods, namely, training dummies for boxing workouts; striking boxing bag platforms; wrist wraps for sports use; hand wraps for sports use; wrist straps design to hold motion-sensors for sports use; jump ropes; battle ropes, namely, a modified jump rope used for exercise; kettle bells; dumb-bells."  The application registered as Reg. No. 5,822,941 ("the '941 Reg.") on July 30, 2019.  Defendants lists its date of first use in commerce as January 15, 2018.

23.    On May 28, 2018, Defendant filed an intent-to-use application, App. Ser. No. 87/938,574 ("the '574 App.") for registration of FIGHTCAMP in International Class No. 042 for "Providing on-line non-downloadable software for the collection, storage and display of performance data from various fitness activities; Providing on-line non-downloadable software for tracking, monitoring and planning fitness training activities; Providing on-line non-downloadable software for viewing audio and video materials featuring physical fitness classes, training, and instruction; Hosting an online website featuring on-line non-downloadable software tools for viewing, tracking, storing, managing, and sharing fitness activity data."

24.    On May 28, 2018, Defendant filed intent-to-use App. Ser. No. 87/938,569 ("'569 App.") for registration of FIGHTCAMP in International Class 025 for "Clothing, namely, t-shirts, long sleeved shirts, turtle neck shirts, mock turtle-neck sweaters, hats, shorts, shirts, leggings, socks, jersey's, pants, headwear

for winter and summer, under wear, tank tops, wristbands, headbands, shoes, rain suits, gloves, jackets, winter caps being headwear, sweat shirts, pullovers, bras."

25.    Each of Defendant's Infringing Marks was filed as an intent-to-use application on May 28, 2018.

26.    FCC's use of its FIGHT CAMP Marks in commerce precedes Defendant's use of the Infringing Marks.

27.    Upon information and belief, Defendant began marketing, promoting and selling its goods and services in connection with one or more of the Infringing Marks no earlier than 2018, well after FCC established priority of use in the FIGHT CAMP Marks by acquiring common law rights in the FIGHT CAMP Marks.

28.    Defendant's past and continuing use of the Infringing Marks is without permission or authorization from FCC.

29.    Upon information and belief, Defendant knew about FCC and FCC's use of the FIGHT CAMP Marks before Defendant began marketing and selling its products and/or services under the Infringing Marks.  FCC and Defendant have their principal places of business less than 20 miles apart and several coaches of Defendant trained with Mr. Beasley at the FCC facility.  Both are using identical marks online that incorporate "fight camp" and offering on-demand fitness programs.

30.    Upon information and belief, Defendant knew about FCC and FCC's use of its FIGHT CAMP Marks before Defendant filed its trademark applications with the USPTO.

31.    Upon information and belief, Defendant knew about FCC and FCC's use of its FIGHT CAMP Marks before Defendant registered the domain name for Defendant's Website.

32.    Defendant sells on-line and on-demand fitness classes, as well fitness gear.  Upon information and belief, the goods and on-line services sold by

1   Defendant under the Infringing Marks are competitive with FCC's goods and
2   services marketed and sold under its FIGHT CAMP Marks.

3       33.    Upon information and belief, Defendant promotes its goods and
4   services under the Infringing Marks on some of the same social media sites that
5   FCC uses to promote its products and services under the FIGHT CAMP Marks.

6       34.    Upon information and belief, Defendant has purchased Google Ads
7   and other search engine ads that incorporate the Infringing Marks and target
8   misspellings of FCC's name in order to have Defendant's Website appear first –
9   before FCC's Website – in customer search results.  Defendant's Website is
10  displayed above FCC's Website even for searches including the words "condition"
11  or "conditioning" along with "fight camp."  Screen prints showing examples of
12  search results are attached hereto as **Exhibit A**.

13      35.    Defendant's use of the Infringing Marks in association with its
14  promotion and sale of its goods and services has caused actual confusion with
15  consumers.  Consumers have attempted to pay FCC for Defendant's goods or
16  services, while others have contacted FCC with complaints regarding Defendant's
17  Website and app.  In the past 4-6 months alone, FCC has received at least 8 emails
18  from customers who have confused FCC with Defendant.

19      36.    On December 13, 2019, FCC sent Defendant a cease and desist letter
20  demanding that Defendant stop using the Infringing Marks.  A copy of the letter is
21  attached hereto as **Exhibit B**.

22      37.    Defendant's attorneys responded requesting that FCC send them
23  information evidencing consumers' actual confusion between the FIGHT CAMP
24  and Infringing Marks.

25      38.    On December 18, FCC sent Defendant's counsel an email attaching
26  several exemplary screen shots showing instances where consumers were confused.
27  A copy of that email is attached hereto as **Exhibit C** and is incorporated in its
28  entirety herein.

39.     FCC still has not received a substantive response to its correspondence with Defendant, forcing it to file the present action.

## COUNT 1

### [False Designation of Origin/Association –

### 15 U.S.C. § 1125(a)(1)(A)]

40.     The allegations of paragraphs 1-39 are repeated and re-alleged as if fully set forth herein.

41.     FCC owns the FIGHT CAMP Marks and has used them in interstate commerce since at least 2011.

42.     Defendant has used, and continues to use, its Infringing Marks in interstate commerce in connection with its marketing and sale of fitness-related goods and services.

43.     FCC's commercial use of the FIGHT CAMP Marks predates Defendant's commercial use of its Infringing Marks.

44.     Defendant's use of the Infringing Marks in commerce is likely to cause confusion, mistake or to deceive customers as to Defendant's affiliation, connection, or association with FCC.  Defendant's use the Infringing Marks is likely to confuse customers into believing FCC approves of, or sponsors, Defendant's products and services.  Defendant's actions therefore constitute infringement and a false designation of origin or association in violation of § 43(a) of the Lanham Trademark Act, 15 U.S.C. § 1125(a)(1)(A).

45.     Defendant's acts are willful and deliberate and made with an intent to reap the benefit of FCC's name, goodwill and reputation.

46.     By reason of Defendant's acts of false designation and association as alleged above, FCC has suffered, and will continue to suffer, substantial damage to its business reputation and goodwill, as well as diversion of trade and loss of profits in an amount not yet ascertained.

47.     Defendant's acts of false designation of origin and association as alleged above have caused FCC irreparable injury, and Defendant threatens to continue to commit such acts, and unless restrained and enjoined, will continue to do so, all to FCC's irreparable injury.  FCC's remedy at law is not adequate to compensate it for injuries inflicted and threatened by Defendant.

## COUNT 2

### [Cybersquatting – Anti-Cybersquatting Consumer Protection Act – 15 U.S.C. § 1125(d), *et seq.*]

48.     The allegations of paragraphs 1-47 are repeated and re-alleged as if fully set forth herein.

49.     Defendant has registered a domain name that is confusingly similar to FCC's distinctive name and FIGHT CAMP Marks, which were and are owned by FCC.  The domain name Defendant registered for Defendant's Website includes the majority of FCC's name and entirety of FCC's "FIGHT CAMP" mark.

50.     Defendant registered and used the domain name for Defendant's Website in bad faith and with the intent to profit from FCC's name and FIGHT CAMP Marks and to divert consumers away from FCC's online location to Defendant's online location.

51.     Defendant did so with the intent to create customer confusion as to the source, sponsorship, affiliation, or endorsement of Defendant's Website by FCC.

52.     Defendant's conduct harmed and continues to harm the goodwill of FCC's name and FIGHT CAMP Marks.

53.     Upon information and belief, Defendant did not believe and had no reasonable grounds to believe that use of the domain name for Defendant's Website was fair use or was otherwise lawful.

54.     Defendant's unlawful acts have directly and proximately caused FCC harm, and will continue to do so, unless Defendant's registration of the URL for Defendant's Website is forfeited, cancelled or transferred to FCC.

## COUNT 3

### [Fraudulent Registration of Marks – 15 U.S.C. § 1120]

55.    The allegations of paragraphs 1-54 are repeated and re-alleged as if fully set forth herein.

56.    Upon information and belief, Defendant knowingly and intentionally submitted declarations to the USPTO that falsely stated Defendant was the owner of the Infringing Marks and falsely stated the dates of their first use in commerce. Upon information and belief, Defendant knew its statements to the USPTO were false and that FCC – not Defendant—was the owner and first user of the Infringing Marks in commerce.

57.    Upon information and belief, Defendant made the false statements regarding these material facts of ownership and first use to the USPTO with the intention of inducing the USPTO to rely upon Defendant's misrepresentations.  The USPTO did rely on the information in allowing 4 of the 6 applications for the Infringing Marks to register.

58.    FCC has suffered damages resulting from the USPTO's reliance on Defendant's misstatements in the form of lost sales and business attributable to Defendant's use of the Infringing Marks.  FCC is further damaged as Defendant's misrepresentation blocks FCC from obtaining federal trademark registration on FCC's FIGHT CAMP Marks.

## COUNT 4

### [State Trademark Infringement]

59.    The allegations of paragraphs 1-58 are repeated and re-alleged as if fully set forth herein.

60.    FCC is the owner of the FIGHT CAMP Marks.

61.    Defendant, without the consent of FCC, used in commerce, the Infringing Marks in affiliation, connection, or association with Defendant's goods and services in a manner likely to cause confusion.

62.     Defendant's acts complaint of herein constitute trademark infringement under the common law of the State of California.

63.     Defendant's conduct as alleged above has damaged and will continue to damage FCC's goodwill and reputation and has resulted in loss of revenue to FCC in an amount to be determined.

64.     Defendant's acts complained of herein constitute malice, oppression and/or fraud thus entitling FCC to recover punitive damages.

## COUNT 5

### [Unfair Competition – Cal. Bus. & Prof. Code § 17200, *et seq.*]

65.     The allegations of paragraphs 1-64 are repeated and re-alleged as if fully set forth herein.

66.     The acts and conduct of Defendant as alleged above in this Complaint constitute unlawful, unfair, and/or fraudulent business acts or practice as defined by California Bus. & Prof. Code § 17200 *et seq.*

67.     Defendant's violation of federal law (15 U.S.C. § 1125(a), (d)) and state common law, as alleged above in the Complaint, constitute unlawful business practice.

68.     Defendant's acts of unfair competition have proximately caused and will continue to cause FCC to suffer injury in fact and monetary damages and lost revenue in an amount be proven at trial.  Defendant's acts of unfair competition have also caused, and are causing, irreparable injury to FCC and to FCC's FIGHT CAMP Marks and to the business goodwill represented thereby, and unless enjoined, will cause further irreparable injury, whereby FCC has not adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, FCC respectfully requests this Court to enter the following relief:

1.     Enter judgment against Defendant that it has:

a. Committed, and is committing, acts of false designation of origin and association against FCC under 15 U.S.C. § 1125(a);

b. Engaged in cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

c. Improperly sought federal registration of the Infringing Marks;

d. Willfully infringed, and is infringing, FCC's rights in its FIGHT CAMP Marks;

e. Engaged in unfair competition in violation of Cal. Bus. & Prof. Code § 17200; and

f. Otherwise injured the business reputation and business of FCC by their acts and conduct set forth in the Complaint;

2. Issue injunctive relief against Defendant, its officers, agents, representatives, employees, attorneys, successors and assigns, and all others acting in concert or participation with Defendant, enjoining them from:

a. Using any of the Infringing Marks, alone or in combination with any other words or symbols, which are likely to cause confusion with FCC's FIGHT CAMP Marks;

b. Doing or causing to be done any further acts of unfair competition in violation of Cal. Bus. & Prof. Code § 17200;

3. Direct that Defendant cancel, abandon, transfer to FCC, or otherwise forfeit its federal trademark applications and/or registrations for the Infringing Marks;

4. Order Defendant to pay FCC damages as follows:

a. FCC's damages, and Defendant's profits, pursuant to Cal. Bus. & Prof. Code § 17200;

b. Punitive damages, in an amount to be determined by the Court, for Defendant's malicious, willful, intentional, deliberate and tortious conduct;

12
COMPLAINT

       c.  Statutory damages of up to $100,000 per domain name for Defendant's willful violation of the Anti-Cybersquatting Consumer Protection Act, as well as forfeiture, cancellation, or transfer of the URL for Defendant's Website improperly registered by Defendant;

       d.  Such other damages as the Court deems just and proper; and

       e.  Interest, including prejudgment interest, on the foregoing sums.

5.      Order Defendant to pay FCC both the costs of this action and its reasonable attorneys' fees;

6.      Award FCC such further relief as this Court deems just and proper.

## **JURY DEMAND**

In accordance with the Federal Rules of Civil Procedure 38 and Local Rule 38-1, FCC respectfully demands a trial by jury on all issues so triable.

Dated:  February 28, 2020

Respectfully submitted,

LOZA & LOZA, LLP.

By: _Lena Bacani_____

    Lena N. Bacani

Attorneys for Plaintiff Goldwell Enterprises, Inc.

COMPLAINT